DOLECKI v. PERRY.

1. RESCISSION—EACH CASE DECIDED ON OWN FACTS.

No all-embracing rule can be laid down as to the right of re-scission or what constitutes waiver, estoppel, laches or elec-tion of remedies as each case must be decided on its own facts.

2. VENDOR AND PURCHASER—RESCISSION—EQUITY.

Plaintiffs, purchasers of three acres of land, improved with house and other buildings, under land contract, *held*, not en-titled to rescission thereof, where after vendor had com-menced summary proceedings to recover possession, pur-chasers wrote letter acknowledging property was no longer theirs and asked for one-half the cost of drilling well, then vigorously contested vendor's claim for restitution, their ap-peal from adverse decision by circuit court commissioner is still pending in circuit court and plaintiffs have visited the premises every other day for a period after filing bill of complaint herein.

Appeal from Macomb; Spier (James E.), J. Sub-mitted October 21, 1936. (Docket No. 128, Calendar No. 39,075.) Decided December 8, 1936.

Bill by Frank A. Dolecki and wife against John T. Perry, for rescission of a land contract, an injunc-tion, a money decree for damages for misrepre-sentations and other relief. Decree for plaintiffs. Defendant appeals. Reversed.

*George W.* and *Clifford A. John,* for plaintiffs.

*Robert H. Meriwether,* for defendant.

BUTZEL, J. On July 13, 1934, defendant entered into an executory contract to sell plaintiffs three

acres of land improved with a one-story house, garage and other small buildings near Mt. Clemens, Michigan. The contract provided for a down payment of $500 and a balance of $2,500 to be paid by the vendees making payments on a $1,300 mortgage on the property and paying the sum of $10 or more each month to the vendor on his equity of $1,200. Plaintiffs claim that defendant represented to them that there was a well 40 feet in depth located in the basement of the house; that the house had double floors; that the roof and garage were in good condition, and that the chicken coop was protected by steel plates embedded in the earth to prevent rats from burrowing into the coop. Plaintiffs found upon moving into the house that the well was only 13½ feet deep and that it was dry and they also claim that the other representations were false.

Defendant claims that for a period of over 10 years sufficient water was obtained from the well, but that owing to a severe drought of over three months' duration there was no water in the well; that this was discussed at the time the contract was made and the purchase price reduced from $3,200 to $3,000 on that account. He further claims that he never ascribed a greater depth to the well than 13½ feet nor were any other false representations made. The parties concede that subsequently they agreed to divide the expense of digging a new well in order to avoid litigation. An experienced well digger was selected by plaintiffs, and, after a hole of 161 feet deep had been drilled and only salt was struck, the drilling was discontinued.

Plaintiffs made only one payment of $10 on the contract and $15 to the bank to be applied on the mortgage. Plaintiffs moved from the property in October or November, 1934. Defendant claims that

plaintiffs began finding fault with the property upon finding that they could not continue to live there without Dolecki risking the loss of his position as a member of the Detroit city fire department; that shortly after the purchase of the property, he received notice from the city clerk of Detroit that he would have to be a resident of Detroit in order to retain his position. Plaintiffs, in the meantime, had cut down three trees and made some changes in the property. After plaintiffs knew the true condition of the property and the unsuccesful efforts to dig a new well, Mrs. Dolecki interviewed a real estate broker in regard to selling the property and renting a home in Detroit. The broker advertised the property for sale, but without any successful result.

On December 11, 1934, notice of intention to declare the forfeiture of the contract was sent to plaintiffs, who took no action. On January 9, 1935, plaintiffs received notice of forfeiture and again took no action. Thereafter summary proceedings were brought before the circuit court commissioner of Macomb county and the case set for February 7, 1935. The following week, defendant received a letter from Dolecki reminding him of his agreement to pay one-half of the cost of digging the new well, and that inasmuch as defendant had foreclosed on the property and it no longer belonged to Dolecki, the latter would not make any further payments, but hold defendant to his agreement to pay one-half of the cost of digging the well. At the trial of the summary proceedings before the commissioner, plaintiffs vigorously contested defendant's claim for restitution and contended that credit for one-half of the cost of the new well should be given them. They also claimed that payments were not to be made until there was a water-producing well on the prem-

ises. The circuit court commissioner in awarding judgment of restitution to defendant, stated that plaintiffs were about to begin a suit to rescind the contract wherein other issues could be tried out. In entering judgment of restitution and finding the amount due, he credited plaintiffs with one-half of the cost of the unsuccessful effort to dig a new well. Plaintiffs thereupon appealed to the circuit court from the judgment of restitution thus rendered. The appeal is still pending.

Shortly after taking the appeal, plaintiffs filed a bill of complaint in the instant case asking rescission of the contract, the enjoining of the action at law and the awarding of damages on account of misrepresentations and a lien on the property for the amount so found to be due. According to plaintiffs' own testimony, during the summer following the filing of the bill of complaint, plaintiffs still visited the property every other day, claiming that they did so for the purpose of looking after it and cutting the grass. The trial court granted rescission, awarded plaintiffs $500, the amount of the down payment, and imposed a lien on the property for its payment.

An all-embracing rule cannot be laid down as to the right of rescission or what constitutes waiver, estoppel, laches or election of remedies. Each case must stand on its own facts. A review of plaintiffs' acts in the premises shows that they are not entitled to rescission. In *Rosenthal* v. *American Construction & Realty Co.*, 262 Mich. 91, it was held that after notice of forfeiture and adjudication before a circuit court commissioner, a contract must be considered at an end. Plaintiff Dolecki, prior to the suit for rescission, acknowledged the forfeiture in a letter written by him in which he also stated that the property no longer belonged to him. Plaintiffs

cannot blow hot and cold at the same time; they cannot rescind after the many acts in affirmance of the contract, including the vigorous contest of the suit before the circuit court commissioner, from whose adverse judgment they appealed. .

The decree is reversed, with costs to defendant, and one may be entered dismissing the bill.

` NORTH, C. J., and FEAD, WIEST, BUSHNELL, SHARPE and TOY, JJ., concurred.  POTTER, J., did not sit.